[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO TERMINATE PERIODIC ALIMONY PAYMENTS AND DETERMINE FINAL SUM DUE
The parties have previously entered into a dissolution agreement. As part of the agreement, the parties have recognized that any, alimony paid to the defendant terminates upon the fulfillment of certain conditions, one of which is the "payment of all sums due at retirement of the husband as provided in paragraph 4.2.b.a." of the agreement. The plaintiff husband has now announced his intention to retire on July 1, 1999.
Before the court is the plaintiff's motion to terminate periodic alimony payments and to determine the final sum due according to the provisions of the agreement. Both parties are in disagreement as to what that final amount should be. Central to the disagreement is the interpretation of the aforementioned paragraph 4.2.b.a.[1]
Specifically, the parties are in disagreement as to the meaning of "then value." According to the plaintiff, the intent of the parties was to create an agreement whereby the defendant CT Page 8816 would be able to increase her share of the Corporate Pension Funds based upon continued work at the Loda Agency and the commissions attained therein.
Since the evidence shows that the defendant left the agency shortly after the agreement and had only one or two commissions, the plaintiff argues that the defendant's "then value" of the fund did not increase and, accordingly, the defendant is entitled only to the amount stated in the agreement. The defendant, on the other hand, argues that the plain language of "then value" shows that the agreement contemplates that the defendant is entitled to one-half of the present value of the pension fund.
A dissolution agreement entered pursuant to a judgment is a contract to which usual contract construction applies. Stein v.Stein, 49 Conn. App. 536 (1998). "A contract is to be construed as a whole and all relevant provisions will be considered together. . . . In giving meaning to the terms of a contract . . . a contract must be construed to effectuate the intent of the contracting parties. . . . The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . In interpreting contract items . . . the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . Absent a statutory warranty or definitive contract language, the trial court's interpretation of a contract, being a determination of the parties' intent, is a question of fact that is subject to reversal on appeal only if it is clearly erroneous. . . ." (Citations omitted; internal quotation marks omitted.) HLO Land Ownership A. Ltd. v. Hartford,248 Conn. 350, 356, ___ A.2d ___ (1999).
The question the court must ask, therefore, is whether there is any ambiguity in the contract. If no ambiguity is present in the contract, then the court must give effect to the contract CT Page 8817 according to the terms therein. The court will first focus on the disputed term "then value" and the impact of the phrase on the contract.
It is undisputable that the use of the phrase "then value" demonstrates that the parties intended that the stated sum of $168,662.50 have, at the very least, the potential for change. In this respect, "then value" is not ambiguous. The ambiguity of the phrase, however, comes into play when one attempts to define this potential change for purposes of calculating an actual sum. That is, ambiguity exists not so much in the phrase as it does in affording a practical meaning to that phrase when one considers the contract as a whole.
At the time of the agreement, ¶ 4.2.b.a was written in a way that provided each party with an equal 50% share of the then existing pension fund to be distributed upon the plaintiff's retirement. The defendant argues that the "then value" language included in that paragraph indicates that, likewise, the defendant would be entitled to a 50% share of the pension fund at the time of the plaintiff's retirement. In support, the defendant points out that, otherwise, the "then value" language would be superfluous if limited only to the stated amount. Moreover, the defendant refers to language in the contract; see, e.g. ¶¶ 3.0, 3.5, 4.2.b.a.; which specifically refers to payment of the defendant's share of the pension fund at the time of plaintiff's retirement as being indicative of the fact that the defendant is entitled to one half of the pension fund existing at that time.
The plaintiff disagrees that "then value" would be superfluous in any other context than the one contemplated by the defendant. In support, the plaintiff proffers a plausible explanation for the inclusion of the "then value" language with the argument that the "then value" of $168,662.50 fluctuates according to the future commissions earned by each party. Looking to the contract as a whole, there are several paragraphs which the plaintiff argues are indicative of the contracting parties' intent. Specifically, the plaintiff cites ¶¶ 3.2, 3.4 and 4.8 as providing the foundations for his argument that the "then value" of the sum payable upon his retirement would change only in the context of any future earnings and commissions by the defendant. The first two paragraphs cited by the defendant, accordingly, provide that the defendant is to continue earning salary and commissions as an insurance associate at the Loda Agency (¶ 3.2) and is expected to work as an associate until the age of CT Page 8818 sixty-five (¶ 3.4). Paragraph ¶ 4.8, meanwhile, indicates, among other items, that all future benefits and pensions earned or acquired are, following the division of property contemplated in the agreement, the exclusive property of the party acquiring such benefits. As such, the plaintiff argues that the "then value" provision, read in the context of the whole contract, would have fluctuated in the defendant's favor only if she continued working and earning commissions.
Though both parties make plausible and persuasive readings of the contract as a whole, neither side offers any conclusive proof as to the intent of the parties in formulating the contract that would reflect the parties' having included "then value" in the contract. Thus, looking at the contract as a whole does, by itself, very little to shed light on the ambiguity associated with "then value." As such, the court may turn to evidence outside of the contract itself.
"The parol evidence rule does not of itself . . . forbid the presentation of parol evidence, that is evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract. Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose it is inadmissible not because it is parol evidence, but because it is irrelevant. By implication, such evidence may still be admissible if relevant . . . to explain an ambiguity appearing in the instrument. . . ." (Citations omitted; internal quotation marks omitted.) HLO LandOwnership A. Ltd. v. Hartford, supra, 248 Conn. 358.
At trial, both parties testified as to what they respectively believed was the meaning and intent of the "then value" phrase in the context of the contract. The testimony of the plaintiff, seems more persuasive and plausible for several reasons.
For one, the plaintiff explained the components of the pension plan referenced in 4.2.b.a. Since that plan is technically not vested, the plaintiff explained that the Extended Earning Fund portion of the plan had the potential of increasing based on additional commissions earned through the placement of insurance policies. In fact, the plaintiff explained that this is precisely what happened in the present case, with the cumulative increase of the pension plan proportionate to the work effort put CT Page 8819 in by the plaintiff. The plaintiff also testified that the defendant, meanwhile, placed only one or two policies and left the agency soon after. Accordingly, the plaintiff testified that had the defendant stayed with the agency and placed orders, her original share of the pension plan, i.e. the $168,662.50, would have increased.
The defendant's evidence does not seem to offer anything that would contradict the purpose of the "then value" clause as explained through the parol evidence. In light of the plaintiff's testimony, the ambiguity of the contract is resolved in the plaintiff's favor. The testimony concerning the pension fund and the way it could increase is crucial in integrating the separate provisions of the contract into a whole, giving meaning to each paragraph. Whereas the plaintiff's arguments concerning contract provisions such as paragraphs 3.2, 3.4 and 4.8 do not alone clarify the ambiguous meaning of "then value," they are extremely persuasive when combined with the plaintiff's testimony in showing the practical considerations behind the intent of the contract.
Accordingly, 4.2.b.a. is interpreted as providing that the original pension fund was originally divided equally by agreement and that, at such time, the "then value" of the equal halves could fluctuate according to the amount of future pension benefits earned by each individual party. The contract, read as a whole, does not provide for the defendant's argument that the present value of the pension fund be distributed equally to both parties.
Accordingly, the sum of $168,662.50 only is awarded to the defendant and alimony may be terminated effective on the date of the plaintiff's retirement from work.
Grogins, J.